UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Satyanarayan Hegde,<br><br>                              Plaintiff,<br><br>     -against-<br><br>Montefiore Medical Center; Albert Einstein College of Medicine; Raanan Arens; David Gozal; Recruitwell, LLC; Erin Brite; Alan Lamb; and Chris Noel,<br><br>                              Defendants. | 25-cv-4222 (AS)<br><br><u>OPINION AND ORDER</u> |

ARUN SUBRAMANIAN, United States District Judge:

   After failing to get a job at a medical center, Satyanarayan Hegde sued an avalanche of parties, proceeding pro se. Before the Court are motions to dismiss filed by all defendants. For the reasons below, the Court GRANTS the motions to dismiss.

## BACKGROUND

   This story begins with Hegde's application to the Department of Pediatrics at Montefiore Medical Center (which is affiliated with the Albert Einstein College of Medicine). Dkt. 5 ¶¶ 6–7, 14. A doctor at Montefiore named Raanan Arens was overseeing the hiring and wanted some more information about Hegde because he had changed jobs a lot. *Id.* at 61–62. He emailed a doctor who had previously worked with Hegde at the University of Chicago named David Gozal to ask about Hegde. *Id.* The reference wasn't good. Gozal wrote that Hegde "is a very difficult personality and does not get along well with others; not a team player and creates tension in the division with other faculty and staff." *Id.* at 61. Arens then decided not to hire Hegde. *Id.* ¶ 20.

   Hegde sued everybody involved. That includes Montefiore, Albert Einstein, Arens, Gozal, the recruiting agency that ran the process (Recruitwell), and a bunch of the agency's employees. Hegde has one set of claims against all defendants: (1) that they violated the Fair Credit Reporting Act (FCRA) by getting and using the reference from Gozal; (2) that they defrauded him; and (3) that he was the victim of negligently misrepresented information. All defendants filed motions to dismiss.

## LEGAL STANDARDS

   To survive a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausi-

bility when the plaintiff pleads factual content that allows the court to draw the reasonable infer-ence that the defendant is liable for the misconduct alleged." *Id.* In reviewing a motion to dismiss, a court "accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plain-tiff's favor." *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016).

Pro se complaints are subject to the same requirements but should be "construed liberally." *Fulton v. Goord*, 591 F.3d 37, 42 n.1 (2d Cir. 2009). That said, "even from pro se plaintiffs, bald assertions and conclusions of law are not adequate to withstand a motion to dismiss." *Ruotolo v. Fannie Mae*, 933 F. Supp. 2d 512, 524 (S.D.N.Y. 2013) (cleaned up).

## DISCUSSION

### I.    There's no "consumer report" here so the FCRA doesn't apply

Under the FCRA, "a person may not procure a consumer report … for employment pur-poses … unless … (i) a clear and conspicuous disclosure has been made in writing to the con-sumer … and (ii) the consumer has authorized in writing … the procurement of the report." 15 U.S.C. § 1681b(b)(2)(A)(i–ii). A consumer report is:

> "any written, oral, or other communication of any information *by a consumer reporting agency* bearing on a consumer's credit worthiness, credit standing, credit capacity, charac-ter, general reputation, personal characteristics, or mode of living which is used or expected to be used … for the purpose of serving as a factor in establishing the consumer's eligibility for … employment purposes." 15 U.S.C.§ 1681a(d)(1) (emphasis added).

The italicized part is crucial. The FCRA applies only when a "consumer reporting agency" gives a reference. That's a defined term in the statute. It means:

> "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer re-ports to third parties…." 15 U.S.C. § 1681a(f).

Hegde's theory of the case is the Gozal (the doctor who gave the reference) is a consumer reporting agency and that his reference was a consumer report. That fails for five reasons. First, Hegde doesn't allege that Gozal charged any fees or dues or that he was engaged "on a cooperative nonprofit basis." *Id.* Second, he doesn't allege that Gozal provided reports "regularly." *Id*. Third, even if Gozal did this regularly, Hegde doesn't allege that he did it regularly "for the purpose of furnishing consumer reports to third parties." *Id.* Fourth, "to qualify as a 'consumer reporting agency' under the FCRA, an entity must specifically intend to furnish a 'consumer report,'" *Kidd v. Thomson Reuters Corp.*, 925 F.3d 99, 103 (2d Cir. 2019), and Hegde similarly makes no such allegation or argument about Gozal's mental state. Fifth, even if Gozal is a consumer reporting agency, the FCRA has a carveout for any "report containing information solely as to … experi-ences between the consumer and the person making the report." 15 U.S.C.§ 1681a(d)(2)(A)(i). Gozal's reference (which Hegde attached to his complaint) described his experience in the work-place with Hegde and so falls into the safe harbor.

All in all, Hegde fails to allege that Gozal meets any part of the definition of a "consumer reporting agency" or that he made a "consumer report." Instead, he reads much of this language out of the statute when he recites the definition. Dkt. 27 at 4. So his FCRA claims are dismissed as against all defendants.[1]

## II.    Hegde can't claim he was defrauded by anybody

Hegde's spaghetti-at-the wall theories of fraud are similarly unavailing. The idea is that Gozal lied in his reference with the intent that Montefiore rely on it and not hire Hegde, injuring him. Dkt. 5 ¶¶ 44–46. On top of that, Montefiore should have told Hegde about the negative reference. And further, what Montefiore (and Recruitwell) *did* tell him were lies. So, in Hegde's words: "Defendants intended to induce Plaintiff to cease further inquiry or challenge (which Plaintiff did, for a time, not knowing what had occurred), and to rely on the legitimacy of the hiring process outcome." Dkt. 5 ¶ 45. None of these theories holds up.

Gozal's reference is at the core of this case—it's Hegde's central grievance with the entire process. But he can't bootstrap a fraud claim from it. His theory of fraud based on misrepresentation isn't viable because the statement was made to somebody else and "a plaintiff does not establish the reliance element of fraud for purposes of … New York law by showing only that a third party relied on a defendant's false statements." *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund & Annuity Fund v. Lollo*, 148 F.3d 194, 196 (2d Cir. 1998). To get around that, Hegde suggests vaguely that he relied on "the legitimacy of the hiring process," Dkt. 5 ¶ 45, but that doesn't plead his own reliance on the statements themselves, or "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Without an actionable statement, Hegde tries to spin this into a theory of fraud by omission. Montefiore and Recruitwell should have told him about the negative reference, he says, and their failure to do so induced his reliance. But when a fraud claim "is based on an omission or concealment of material fact, the plaintiff must also demonstrate that the [defendants] had a duty to disclose material information." *Barrett v. Freifeld*, 908 N.Y.S. 2d 736, 737 (2d Dep't 2010). That duty arises only when: (1) there's a fiduciary relationship, (2) one party has special knowledge and knows that the other party is acting "on the basis of mistaken knowledge," or (3) one party has made a partial or ambiguous statement that's incomplete without more information. *First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd.*, 52 F. Supp. 625, 637 (S.D.N.Y. 2014). None of these circumstances is present here. First, "[a]n employment relationship does not constitute a 'confidential or fiduciary' relationship." *Loc. 144, Hotel, Hosp., Nursing Home & Allied Servs. Union, SEIU, AFL-CIO v. CNH Mgmt. Assocs., Inc.*, 713 F. Supp. 680, 693 (S.D.N.Y. 1989) (citation omitted); *see also Pauwels v. Deloitte LLP*, 83 F.4th 171, 183–84 (2d Cir. 2023) ("Employment relationships, without more, do not create fiduciary relationships." (cleaned up)). Hegde wasn't

---

[1] In a declaration in response to one motion to dismiss, Hegde (for the first time) claims that "Google" and "OIG Exclusion" searches were done on him. Dkt. 73. But he doesn't make any arguments or plead any facts that would support that either Google or the United States Department of Health & Human Services are consumer reporting agencies.

even an employee of Montefiore—he was a *potential* employee. And Recruitwell worked for Montefiore, not Hegde. Dkt. 5 ¶ 10. So that theory goes nowhere. Second, Hegde doesn't allege that he was acting based on *mistaken* knowledge and so can't satisfy that prong. If acting based on not having knowledge were the same thing as acting based on mistaken knowledge, then the bar to establish a duty to disclose would collapse entirely. Third, Hegde doesn't identify any partial representation and so doesn't meet that third prong either. All in all, he can't establish fraud by omission.

That just leaves a couple of other alleged misrepresentations involving Recruitwell and its employees, neither of which is clearly explained. These are: (1) that Recruitwell had an "undisclosed conflict[] of interest" because it was going to merge with another company, and (2) that the recruiters "misrepresented that [Recruitwell] was acting solely on behalf of" Montefiore, while the merging recruitment company's "interests influenced the recruitment." Dkt. 5 at 4. The first theory fails for the same reason that Hegde's other omission theory does—he doesn't show any fiduciary relationship between him and Recruitwell or its employees or any other basis for a duty to disclose. And the second fails because Hegde doesn't identify an affirmative misrepresentation, so it collapses back into the omission theory. Both theories additionally fail because Hegde again doesn't "state with particularity the circumstances constituting fraud," leaving the Court to guess about what they could possibly be. Fed. R. Civ. P. 9(b).

### III.    Hegde's negligent-misrepresentation claims fail for similar reasons

The same general logic explains why Hegde's negligent-misrepresentation claims fail. First off, "under New York law a cause of action for negligent misrepresentation can be maintained only when the plaintiff *himself or herself* relies on statements made by the defendant." *King v. Crossland Sav. Bank*, 111 F.3d 251, 258 (2d Cir. 1997). That sinks Hegde's argument.

But on top of that, negligent misrepresentation (like fraud by omission) requires a special relationship between the plaintiff and defendant. *Hydro Invs., Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000). Hegde argues that "Montefiore engaged Plaintiff through a structured pre-interview process involving personalized correspondence and written screen questions," creating "more than an arm's length interaction." Dkt. 27 at 7. But, again, this is less than an employer-employee relationship, and "courts have routinely held that the employer-employee relationship does not constitute a special relationship to support a claim for negligent misrepresentation." *Kwon v. Yun*, 606 F. Supp. 2d 344, 356 (S.D.N.Y. 2009); *see also Columbo v. Philips Bryant Park LLC*, 2024 WL 1138942, at *13 (S.D.N.Y. Mar. 15, 2024). Hegde's only authority to the contrary is *Kimmel v. Schaefer*, 675 N.E. 2d 450 (N.Y. 1996), a case which addressed the totally different context of speaking to potential *investors* who would rely on that information; it has no bearing on the pre-employment context.

### IV.    Hegde's motions to strike, for discovery, and for declaratory judgment are denied

Through the brief life of this case, Hegde has made some additional requests of the Court. The Court addresses them one-by-one:

*First*, Hegde's motions to strike are denied. Hegde has asked the Court to strike parts of entries from the docket—Dkts. 48-7 and 57-7, which correspond to briefs filed in support of motions to dismiss. Dkt. 60. The gist of his grievance is that the documents allegedly list other lawsuits that Hegde has filed against his would-be employers, they describe him as a "serial litigant," and he otherwise disagrees with the defendants' legal arguments and how they've characterized the past litigation. Dkt. 57-7 at 10. Though Hegde identifies two entries, the Court was able to locate the offending statements in only one of them. But it doesn't matter either way. Rule 12(f) permits a court to strike matter "from a pleading." Fed. R. Civ. P. 12(f). And a pleading includes only: "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to answer." Fed. R. Civ. P. 7(a). It doesn't include briefs in support of motions to dismiss.

*Second*, Hegde's motion for discovery is denied. Despite Hegde's argument to the contrary, the disposition of these motions to dismiss doesn't depend on any disputed factual issues (as shown above).

*Third*, Hegde's motion for declaratory judgment is denied as moot. Hegde requested declaratory judgment on a series of questions—for example, whether the FCRA applies here and whether anybody had a fiduciary duty to him. Dkt. 60 at 4. These questions have now been disposed of in this opinion. And because the case is dismissed, the answer to any other question is irrelevant, even if declaratory judgment were an appropriate vehicle to answer them.

### CONCLUSION

Defendants' motions to dismiss are GRANTED and Hegde's claims are DISMISSED against all defendants. While the motions to dismiss were being briefed, Hegde also filed a motion to amend his complaint, Dkt. 81, which the Court held in abeyance pending resolution of the motions to dismiss, Dkt. 85. If defendants wish to file a formal opposition to that motion, they may do so on or before January 16, 2026. Alternatively they may inform the Court that they will rely on their prior letter response. Dkt. 83. Hegde may file a reply brief on or before January 30, 2026. Hegde also asks for leave to file *another* proposed amended complaint. Dkt. 86. That request is denied.

This is a case in which the plaintiff has had many bites at the apple. Hegde previously brought a suit based on the same set of facts against a subset of these defendants, he *got discovery*, and he voluntarily dismissed that suit with prejudice. In this case, he relied on the materials he got in discovery from the last case, already amended his complaint, and further filed additional declarations on the docket afterward with additional factual allegations.

Now, Hegde wants to file another amended complaint, adding new factual allegations and three new defendants (including the lawyers on the opposite side of this case from him). Given Hegde's pro se status, the Court will give him a chance to fully brief the pending motion to amend concerning his current proposed amended complaint. But Hegde is not entitled to amend his complaint as a matter of right, and he must demonstrate that his current proposed amendment is warranted,

including that it would not be futile, is not made in bad faith, would not unduly delay these proceedings, and would not impose an undue prejudice on the defendants. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

The Clerk of Court is directed to terminate Dkts. 9, 48, 57, 60, and 74.

SO ORDERED.

Dated: December 30, 2025
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge

6